UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OLIVER LYONS

V. C. A. NO. 07-409 ML

A. T. WALL, ET AL

DEFENDANTS' OBJECTION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Now come the Defendants in the above-entitled matter and hereby object to Plaintiff's motion for preliminary injunction as and for the reasons proffered in the accompanying Memorandum.

DEFENDANTS,
By Their Attorney,

/S/ Michael B. Grant

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864

CERTIFICATION

The undersigned hereby certifies that on this, the 2nd day of April, 2008, I mailed a true copy of the within Defendants' Objection To Plaintiff's Motion For Preliminary Injunction and accompanying Memorandum to Oliver Lyons, P. O. Box 8200, Cranston, R. I. 02920.

/S/ Michael B. Grant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OLIVER LYONS

V. C. A. NO. 07-409 ML

A. T. WALL, ET AL

**MEMORANDUM**

Plaintiff has brought the instant action pursuant to 42 U.S.C. § 1983 alleging that the Defendants have violated his Eighth Amendment rights to be free from cruel and unusual punishment in being subject to a constant barrage of gassings and excessive use of force by prison staff; that Defendant officials violated his Due Process rights under the Fourteenth Amendment by subjecting him to an unfair and arbitrary discipline board calculated to deny Plaintiff of the assistant of a counselor during the hearing, witnesses, and all physical evidence; that Defendants have tampered with and read his mail in violation of Due Process. Senior United States Magistrate Judge Jacob Hagopian in a Report and Recommendation dated March 18, 2008, recommended to this Court that Plaintiff's motion to dismiss should be granted.

Plaintiff recently has filed the instant motion alleging that he is currently placed in the Observation-Stabilization Unit, where he is confined to a cell that has a video camera installed therein, and thus, he can be viewed unclothed by various prison staff, including female staff.

**PRELIMINARY INJUNCTION**

The Court will issue a preliminary injunction to preserve the status quo and to prevent irreparable harm until the Court has had an opportunity to rule on the merits of the complaint. Thus, a moving party must necessarily establish a relationship between injury claimed and the party's motion in the conduct asserted in the complaint. **Penn v. San Juan Hospital, Inc.**, 528 F. 2d 1181, 1185 (10th Cir. 1975); **Devose v. Herrington**, 42 F. 3d 470 (8th Cir. 1994).

Here, Lyons' motion for a preliminary injunction is not related to preserving this Honorable Court's decision-making power over the merits of his 42 U.S.C. § 1983 lawsuit. To the contrary, Plaintiff's motion is based upon new assertions that are distinct from the claims raised in the complaint. Accordingly, these new assertions cannot provide the basis for preliminary injunction and the Plaintiff's motion should be denied.

Finally, and interestingly enough, Plaintiff, in his motion, is now complaining about being placed in a cell that possesses a video camera in order to insure his safety and to monitor his activity. However, several weeks ago Plaintiff complained to this Court that the Defendants had knowledge of he being a danger to himself, likely to injure himself at any time and that the Defendants would not be adequately prepared to respond.

**CONCLUSION**

In light of the fact that the Plaintiff's new assertions contained in his motion are distinct from the claims raised in his Section 1983 complaint, Plaintiff's motion should be denied.

Respectfully submitted,

/S/ Michael B. Grant

______________________

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDSON TORO

V. C. A. NO. 08-064 S

STATE OF RHODE ISLAND, ET AL

A. T. WALL'S MOTION TO DISMISS

Now comes Defendant A. T. Wall, II, Director of the Rhode Island Department of Corrections, and hereby moves to dismiss the instant complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as and for the reasons proffered in the accompanying Memorandum.

DEFENDANTS,
By his Attorney,

______________________________
Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920

CERTIFICATION

The undersigned hereby certifies that on this, the day of March, 2008, I mailed a true copy of the within A. T. Wall's Motion to Dismiss and accompanying Memorandum to Edson Toro, P. O. Box , Cranston, R. I. 02920.

______________________________

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDSON TORO

V. C. A. NO. 08-064 S

STATE OF RHODE ISLAND, ET AL

MEMORANDUM

Plaintiff, who is acting Pro Se. at all pertinent times and is a Rhode Island penal inmate has brought the instant action pursuant to 42 U.S.C. § 1983 against the State of Rhode Island, the Rhode Island Superior Court Now comes Defendant A. T. Wall, II, Director of the Rhode Island Department of Corrections, and hereby moves

February 19, 2008

Susan J. Gardner
Senior Compliance Officer
Commission For Human Rights
180 Westminster Street
Providence, Rhode Island 02903

Re: Raymond Waite v. State of Rhode Island
RICHR # 07RTB229

Dear Ms. Gardner:

The instant correspondence shall serve as a response to your letter and inquiry dated January 24, 2008.

1. On what date did Mr. Waite meet with Ms. Debbie Mathieu, Chief Dietician, and expressed that he "had no outstanding issues" with his "renal diet" accommodation? Please submit a statement from Ms. Mathieu confirming that information.

RESPONSE: See attached memo from Ms. Mathieu.

2. Was Mr. Waite's request for an extra roll of toilet paper honored? If so, on what date did the accommodation begin?

RESPONSE: On February 11, 2008, the undersigned spoke with Correctional Officer Cunningham, who was posted in Mr. Waite's module. I asked Officer Cunningham if Mr. Waite had been given extra toilet paper because of his condition and the Officer did not know. While on the telephone with the Officer, Raymond Waite was summoned and the Officer inquired as to whether he received extra toilet paper. Mr. Waite indicated that he did not; however, I overheard the Officer telling Mr.Waite that he or any inmate can request extra toilet paper at any time, and his request would be granted in light of the fact that toilet paper is not contraband. Mr. Waite sounded to be satisfied and Officer Cunningham assured me that if Mr. Waite requests extra toilet paper, it would be granted.

3. Please submit copies of all letters written to Joe Marocco by the complainant and a statement from Mr. Marocco confirming when he became aware of Mr. Waite's accommodation request as well as what actions he took and/or directed others to take (and when) as a result of these requests.

RESPONSE: On February 12, 2007, Mr. Waite wrote to Joseph Marocco relative to furlough charges that were made for medical care that should be exempt from the same as a result of his chronic condition. On February 23, 2007, Mr. Marocco wrote back to Mr. Waite and affirmed that his dialysis treatments are exempt from the co-payment policy. Mr. Marocco also responded to the complainant's inquiry as to why he was denied medical parole, complainant's inquiry relative to the co-payment policy in general; responded to the Plaintiff's inquiry about toilet paper, that the complainant would have to request the same from Officers in his living area, not through his office, and also, Plaintiff's inquiry relative to emergency services being subject to a co-payment. Mr. Marocco also forwarded to the complainant for his review Department Policy No. 2.28.2, entitled "Medical Co-pay".

Complainant wrote to Joseph Marocco in a letter dated July 13, 2005 wherein he indicated he had been taken to the hospital three times a week for dialysis and that, he was being charged a co-pay in error. Mr. Marocco, on August 3, 2005 responded to the complainant in a memo dictating that any co-payments made by complainant for dialysis would be reversed. Mr. Marocco also indicated to the complainant in his memo that he would correspond with Inmate Accounts relative to the same for complainant's being reimbursed for all wrongful co-pays.

On April 5, 2006, Mr. Marocco responded to the complainant, who had sent him a copy of his Inmate Accounts ledger. Apparently, complainant had given the ledger to his inmate counselor, who in turn forwarded the ledger to one of Mr. Marocco's staff. Mr. Marocco, in his April 5, 2006 memorandum asked complainant. Mr. Marocco advised complainant and in the future the proper procedure for questioning ledger

charges are to write to Inmate Accounts. Mr. Marocco also indicated that the base of service (apparently questioned by complainant) that complainant had been charged with the services were not the dialysis and listed five dates of when complainant received services.

On December 15, 2006, Joseph Marocco wrote to complainant relative to complainant's ledger that was given to one of Mr. Marocco's staff members. Mr. Marocco, in this memo, advises complainant relative to the co-payment policy that he should review his inmate account ledger monthly.

On December 14, 2006, Cathy Frappier, in the Health Care Services division wrote to Lucille Curran from Inmate Accounts a questioning letter complainant was overcharged for service on June 1, 2006.

On November 29, 2006, complainant wrote to Mr. Marocco wherein complainant indicates that he feels he is not being fully compensated for his employment and also, being wrongfully charged co-pays.

On December 13, 2006, Mr. Marocco, in a memo, responded to complainant indicating that any questions regarding his employment pay would have to be addressed with the correctional officer, who handles his employment. Mr. Marocco also indicates in his memo to the complainant that he has conferred with Inmate Accounts to review the charges questioned by complainant and it was determined that he was exempt from a co-pay for four dates of service, and therefore thirty dollars in transactions would be voided.

See attached copies of all correspondence in possession concerning the above-referenced correspondence between complainant and Mr. Marocco.

4. You submitted a document to us in the form a spreadsheet showing the complainant's account involving (furlough fees), etc. Is this a report generated directly from a request to your computer system, or did the list have to be created manually. Please explain the process.

RESPONSE: A staff member from the Department's Inmate Accounts office reviewed complainant's ledger (a listing of all entries made concerning deposits and withdrawals), identified all entries entitled "Furlough Fees" (denoting that complainant left the ACI for a medical visit). Inmate Accounts can retrieve information concerning each furlough fee entry by looking in a description window. When complainant was initially charged for co-pays which were alternately voided on a spreadsheet (furlough dates 9/5/06, 9/27/06, 10/6/06, 10/30/06) said entries were initially made in error because there was an inadequate description provided to Inmate Accounts, which would clearly demonstrate that an exemption to the co-pay was warranted. The spreadsheet that was submitted to this Commission was generated manually via the process stated above.

5. Obviously, since the disputed fees were voided, they must have been charged in error. Please explain the issue or misunderstanding which caused the charges to occur. Who was responsible for the error? How was it caught?

RESPONSE: See Response to No. 4.

6. When and how was Mr. Waite made aware that his account had been corrected. Is this documented?

RESPONSE:

Respectfully submitted,

________________________

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No.

CERTIFICATION

The undersigned hereby certifies that on this, the day of February, 2008, I mailed a true copy of the within -------------- to Raymond Waite, P. O. Box 8274, Cranston, R. I. 02920.

______________________________